# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KWANM ARI MICHAEL YISRAYL,** | ) | |
| **a/k/a GERALD WILKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL NO. 09-cv-457-DRH** |
| **vs.** | ) | |
| | ) | |
| **ROGER E. WALKER, JR., et al.,** | ) | |
| | ) | |
| **Defendants.** | | |

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

Plaintiff Yisrayl, formerly an inmate in the Tamms Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.  In this action, Yisrayl presents 13 different counts alleging assorted infringements upon his religious practices, in violation of his rights under the First, Eighth and Fourteenth Amendments, as well as under 42 U.S.C. § 2000cc-1, *et seq*.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## COUNT 1

Yisrayl is a practitioner of the African Hebrew Israelite faith.  His first claim is that for several days in April 2006, and again in April 2008, Defendant Sullivan refused to serve him unleavened bread as mandated by his faith.  He also states that she failed to serve him a special religious meal for a Holy Day event in June 2008.  Yisrayl asserts that her actions were done in violation of his First Amendment right freely practice his religion.

The law is clear that a prisoner retains his or her First Amendment right to practice his religion, subject to prison regulations that do not discriminate between religions and are reasonably related to legitimate penological objectives.  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987); *Turner v. Safley,* 482 U.S. 78, 89 (1987); *Sasnett v. Litscher,* 197 F.3d 290, 292 (7th Cir. 1999).  It is also well-settled that observance of religiously mandated dietary restrictions is a form of religious practice protected by the First Amendment.  *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990)(citing cases).  Accordingly, at this time the Court is unable to dismiss Yisrayl's First Amendment claim regarding Sullivan's interference with his religious diet.

## COUNT 2

The second claim is brief.  Yisrayl asserts that he made written and verbal complaints about

Sullivan, as alleged in Count 1, to Defendants Walker, Watts, Bantey, Lambert and Miller, but that they failed to remedy the problem.

Yisrayl's theory appears to be that any prison employee who is told about his problems has a duty to fix those problems.  That theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's."  *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).  *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions).

Yisrayl makes no allegations that any of these defendants were personally involved in Sullivan's decisions regarding his religious diet, and thus he has failed to state a claim upon which relief may be granted.  Accordingly, Count 2 will be dismissed from this action with prejudice.

## COUNT 3

Referring back to his allegations in Count 1 and Count 2, Yisrayl alleges that by their actions and inactions, Defendants Walker, Watts, Bantey, Lambert, Miller and Sullivan discriminated against him because of his religion, in violation of his rights under the Fourteenth Amendment.

> [T]he "Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers...." *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970).  A plaintiff "must demonstrate intentional or purposeful discrimination" to show an equal protection violation.  *Bloomenthal v. Lavelle*, 614 F.2d 1139, 1141 (7th Cir. 1980) (per curiam).  "'Discriminatory purpose' however, implies more than intent as volition or intent as awareness of consequences." *Personnel Administrator of Massachusetts v. Feeny*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979).  It implies that the decision-maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982).

*David K. v. Lane*, 839 F.2d 1265, 1271-72 (7th Cir. 1988).  *See also Turner v. Safley,* 482 U.S. 78, 89 (1987)("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

For the reasons set forth above in Count 2, Yisrayl has failed to state a claim against Walker, Watts, Bantey, Lambert and Miller.  Consequently, they will be dismissed with prejudice from Count 3.

## COUNT 4

Yisrayl alleges that from 2005 through the present, Defendants Walker, Watts, Bantey, Lambert and Miller have systematically denied his requests for access to books and literature, video programming, and a turban, all of which he deems necessary to practice his religion.  In denying him access to these materials, he asserts that they have violated his rights under the First Amendment.

Applying the standards set forth above in Count 1, the Court is unable to dismiss any portion of Count 4 at this time.

## COUNT 5

In Count 5, Yisrayl singles out Defendant Miller.  He asserts that Miller has deliberately denied his requests for religious books, literature and other materials related to his faith.  In contrast, he states that Miller makes equivalent materials available to Christian inmates, thus discriminating against Yisrayl and his faith in violation of his rights under the Fourteenth Amendment..  Moreover, he asserts that Miller brings Christian materials to him in an attempt to convert him to Christianity.

Applying the standards set forth above in Count 3, the Court is unable to dismiss any portion of Count 5 at this time.

## COUNT 6

Yisrayl asserts that Defendants Walker, Watts, Bantey and Lambert "were aware" that he was being denied his rights to equal protection as alleged in Count 5, yet they "failed to intervene" in the situation. Such allegations present, at best, a claim of negligence, but a defendant can never be held liable under § 1983 for negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). Moreover, as explained above in Count 2, the doctrine of respondeat superior does not apply to § 1983 actions.

Accordingly, Count 6 will be dismissed from this action with prejudice.

## COUNT 7

Yisrayl next asserts that Walker, Watts, Bantey, Lambert and Miller have not hired a clergy member of his faith, thus impeding his efforts to observe his religion. He also asserts that over the same time period, they have employed clergy members of Muslim, Jewish, Catholic and Christian faiths, in violation of the Establishment clause of the First Amendment.

> The First Amendment states that "Congress shall make no law respecting an establishment of religion...." *Lemon v. Kurtzman,* 403 U.S. 602, 612-13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) teaches that a government policy or practice violates the Establishment Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion. The Establishment Clause also prohibits the government from favoring one religion over another without a legitimate secular reason. *See Linnemeir v. Bd. of Trustees of Purdue Univ.,* 260 F.3d 757, 759 (7th Cir. 2001); *Metzl v. Leininger,* 57 F.3d 618, 621 (7th Cir. 1995) ("The First Amendment does not allow a state to make it easier for adherents of one faith to practice their religion than for adherents of another faith to practice their religion, unless there is a secular justification for the difference in treatment.").

*Nelson v. Miller*, 570 F.3d 868, 881 (7th Cir. 2009).

Under these standards, the court is unable to dismiss any portion of Count 7 at this time.

## COUNT 8

Referring back to his allegations in Count 7, Yisrayl alleges that in their decisions regarding employment of clergy, Defendants Walker, Watts, Bantey, Lambert and Miller discriminated against him and his faith in violation of his rights under the Fourteenth Amendment.  Applying the standards set forth above with Count 3, the Court is unable to dismiss any portion of Count 8 at this time.

## COUNT 9

Yisrayl asserts that during the time he has been at Tamms, Defendant Sullivan has failed to provide him with a wholesome, nutritious vegan diet as mandated by his religious beliefs. Specifically, he asserts that his meals have fallen short of providing a daily intake of 2800 calories, and that the fresh fruit given to him is often of poor quality.  Thus, he asserts that he has been subjected to cruel and unusual punishment, in violation of his rights under the Eighth amendment.

To establish a violation of the Eighth Amendment, a prisoner must prove two elements: (1) the deprivation alleged is sufficiently serious such that it resulted in the "denial of the minimal civilized measure of life's necessities" and (2) prison officials knew of a substantial risk to the prisoner but failed to take reasonable steps to prevent the harm from occurring.  *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In some circumstances, a prisoner's claim that he was denied food may satisfy the first element but, as the Seventh Circuit has held, the denial of food is not a *per se* violation of the Eighth Amendment. Rather, a district court "must assess the amount and duration of the deprivation."  *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999).  *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ( it would be an Eighth Amendment violation to deny a prisoner of an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an

inmate can, in some circumstances, satisfy the first *Farmer* prong); *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation; *Cooper v. Sheriff of Lubbock County*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand*, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned . . . of sufficient food to maintain normal health."); *Robbins v. South*, 595 F.Supp. 785, 789 (D.Mont. 1984) (requiring inmate to eat his meals in less than 15 minutes does not amount to cruel and unusual punishment).

It does not appear that Yisrayl has missed any meals, nor does he allege harm to his health. His claims therefore do not rise to the level of a constitutional violation, and Count 9 will be dismissed from this action with prejudice.

## COUNT 10

Yisrayl alleges that Walker, Watts, Bantey, Lambert, Miller and Griswold were made aware of his dietary concerns, as detailed above in Count 9, yet they failed to remedy the situation. Such allegations present, at best, a claim of negligence, but a defendant can never be held liable under § 1983 for negligence. *Daniels*, 474 U.S. at 328; *Zarnes*, 64 F.3d at 290. Moreover, as explained above in Count 2, the doctrine of respondeat superior does not apply to § 1983 actions.

Accordingly, Count 10 will be dismissed from this action with prejudice.

## COUNT 11

Once again in reference to his substandard vegan meals, Yisrayl asserts that Walker, Watts, Bantey, Lambert, Miller, Griswold and Sullivan discriminated against him for his religious beliefs,

in violation of his rights under the Eighth Amendment.  However, his specific allegations suggest just the opposite – by providing him with his requested vegan meal, it appears to the Court that Defendants have accommodated his religious dietary requests and thus have not discriminated against him.  Therefore, he has failed to state a claim upon which relief may be granted, and Count 11 will be dismissed from this action with prejudice.

## COUNT 12

Yisrayl alleges that Defendants Walker, Watts, Bantey, Lambert, Miller and the US Postage Service have interfered with his right to communicate or associate with other practitioners of his faith, in violation of his rights under the First Amendment.  He asserts, vaguely, that religious materials have been sent to him at the prison but not delivered to him.  He also states that the US Postal Service has refused to deliver his outgoing mail to other practitioners of his faith; in fact, he states that his outgoing mail was returned to him.

Two separate claims are presented by these allegations.  First, the Court understands Yisrayl as alleging that Walker, watts, Bantey, Lambert and Miller failed to deliver to him religious literature that was mailed to him.  This is essentially the same claim presented in Count 4, and it will therefore be dismissed as repetitive.

As for his claim against the Postal Service: Yisrayl has not alleged that he has pursued an administrative tort remedy with the post office for failing to deliver his outgoing mail, or that he was denied relief.  Suits against the Postal Service are governed federal statute, *see* 39 U.S.C. § 409, and exhaustion of the administrative tort procedure is a jurisdictional prerequisite to filing the tort claim in federal court.  28 U.S.C. § 2675(a).  Thus, he has failed to state a claim against the Postal Service upon which relief may be granted.

Accordingly, Count 12 will be dismissed with prejudice in its entirety.

## COUNT 13

In his final claim, Yisrayl asserts that the events alleged in Count 12 constitute a denial of equal protection, in violation of his rights under the Fourteenth Amendment. He lists no defendants with respect to this claim, so the Court surmises that Yisrayl meant to name the same defendants associated with Count 12.

As discussed above, his claim regarding deprivations of religious literature is repetitive, and he has no claim against the Postal Service. According, Count 13 will be dismissed from this action with prejudice.

## OTHER CLAIMS

After setting forth his 13 separate counts, Yisrayl then presents four "claims"(Doc. 1, p.12) in which he incorporates by reference the detailed allegations made in paragraphs 1-39. In *Claim 1*, he asserts that all Defendants' actions constitute cruel and unusual punishment, in violation of his rights under the Eighth Amendment. The only count that could possibly implicate the Eighth Amendment is Count 9 involving his vegan diet, but that claim does not survive review. Thus, the Eighth Amendment has no bearing on this action, and Claim 1 will be dismissed.

*Claim 2* asserts generalized deprivations of equal protection under the Fourteenth Amendment. *Claim 3* asserts generalized deprivations of his religious freedom under the First Amendment. These generalized claims are simply repetitive of his more specific counts discussed above, and they are unnecessary. Accordingly, Claim 2 and Claim 3 will be dismissed.

*Claim 4* asserts that Defendants' actions were done in violation of RLUIPA,42 U.S.C. § 2000cc-1, *et seq*. This claim will be allowed to proceed as to the surviving counts, but is will be

dismissed with respect to Count 2, Count 6, Count 9, Count 10, Count 11, Count 12 and Count 13.

**DISPOSITION**

IT IS HEREBY ORDERED that **COUNT 2, COUNT 6, COUNT 9, COUNT 10, COUNT 11, COUNT 12**, and **COUNT 13,** and **CLAIM 1, CLAIM 2** and **CLAIM 3** are **DISMISSED** from this action with prejudice.  Defendants **GRISWOLD** and **US POSTAL SERVICE** are also **DISMISSED** from this action with prejudice.  Plaintiff is **ADVISED** that, within the Seventh Circuit, dismissal of these claims and defendants count as a strike for purposes of § 1915(g).  *See George v. Smith,* 507 F.3d 605, 607-08 (7th Cir. 2007); *Boriboune v. Berge,* 391 F.3d 852, 855 (7th Cir. 2004).

The Court notes that prior to filing this action, Plaintiff had accumulated two strikes.  *See Wilkins v. Blagojevich*, Case No. 08-cv-3275-HAB (C.D. Ill., filed Nov. 24, 1008); *Wilkins v. Powers*, Case No 07-cv-599-GPM (S.D. Ill., filed Aug. 21, 2007).  After he initiated this action in the Central District of Illinois in March 2009, a third strike was assessed.  *See Wilkins v. I.D.O.C.*, Case No. 08-cv-372-JPG (S.D. Ill., filed Oct. 17, 2008) (claims dismissed and strike assessed July 1, 2009).  As stated above, dismissal of some claims and defendants in this action constitutes yet another strike.  **Plaintiff is now ADVISED that he has struck out,** *see* **28 U.S.C. § 1915(g), and he may no longer proceed** *in forma pauperis* **in the federal courts unless he is in imminent danger of serious physical harm.**

IT IS FURTHER ORDERED that Plaintiff shall complete and submit a USM-285 form for Defendants **BANLEY, LAMBERT, MILLER, SULLIVAN, WALKER** and **WATTS** within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order.  The Clerk is **DIRECTED** to send Plaintiff **SIX (6)** USM-285 forms with Plaintiff's copy of this Memorandum

and Order.  **Plaintiff is advised that service will not be made on a defendant until Plaintiff submits a properly completed USM-285 form for that defendant.**

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **BANLEY, LAMBERT, MILLER, SULLIVAN, WALKER** and **WATTS**.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **BANLEY, LAMBERT, MILLER, SULLIVAN, WALKER** and **WATTS** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal.  Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for

waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** of his continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts during the pendency of this action.  This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.  Failure to provide such notice may result in dismissal of this action.  *See* FED.R.CIV.P. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 27, 2010.**

/s/    DavidRHerndon
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**