IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALD WILKINS, )<br>a/k/a KWANM ARI MICHAEL YISRAYL, )<br> )<br>Plaintiff, )<br> )<br>vs. )<br> )<br>ROGER E. WALKER, JR., )<br>WILLIAM WATTS, )<br>GREG LAMBERT, )<br>CARL MILLER, )<br>BONNIE SULLIVAN, )<br>and KEN BARTLEY, )<br> )<br>Defendants. )<br> ) | Case No. 09−cv−0457−MJR−SCW |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

      Gerald Wilkins (also known as Kwanm Ari Michael Yisrayl and referred to herein as Wilkins) formerly was an inmate in the custody of the Illinois Department of Corrections (IDOC).[1] A professed member of the African Hebrew Israelite of Jerusalem (AHI) faith, Wilkins alleges that his constitutional and statutory rights were violated while he resided at Tamms Correctional Center (Tamms), located within this Judicial District. In March 2009, he filed suit in this Court under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.* (RLUIPA), and the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1–99 (IRFRA).

---

[1] Prior pleadings and Orders referred to Plaintiff as Yisrayl (his religious name). In June 2011 he requested that the Court send all further documents to him via the name Gerald Wilkins, to ensure his receipt of mail. An Order was entered changing his name on the docket sheet to accomplish this. To be consistent with that directive, the Court refers to Plaintiff as Wilkins throughout this Order.

Now before the Court is Defendants' summary judgment motion (Doc. 64), which became ripe for disposition after the final brief was filed December 6, 2011. For the reasons explained below, the Court grants in part and denies in part Defendants' motion. Judge Williams will conduct a final pretrial conference herein on January 30, 2012 at 10:00 a.m.

## FACTUAL AND PROCEDURAL BACKGROUND

Wilkins was incarcerated at Tamms from 2005 to 2009. He subsequently was transferred to Statesville, Galesburg, and Menard Correctional Centers (Doc. 65-1, 2). He was released from IDOC custody on November 21, 2011 (Doc. 75). In March 2009, while still incarcerated, Wilkins filed suit in this Court naming as Defendants seven individuals and the U.S. Postal Service. The case randomly was assigned to the Honorable David R. Herndon.

In January 2010, after conducting a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, Chief Judge Herndon dismissed with prejudice ten of Wilkins' claims and two defendants (one individual, Suzann Griswold, plus the U.S. Postal Service). The case was reassigned to the undersigned District Judge one year ago (*see* Order at Doc. 35). Wilkins secured leave to file an amended complaint in February 2011, adding claims under IRFRA.

After Judge Herndon's threshold order and Wilkins' filing of the amended complaint, remaining herein are claims under the First Amendment's Free Exercise and Establishment Clauses,[2] RLUIPA, IRFRA, and the Fourteenth Amendment's Equal Protection Clause.[3] Wilkins asks for compensatory and punitive damages, plus declaratory and injunctive relief.

---

[2] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." **U.S. CONST. amend. I, cl. 1–2.** The First Amendment is applied to the states via the Fourteenth Amendment's Due Process Clause. *Vinning-El v. Evans*, **657 F.3d 591, 592 (7th Cir. 2011).**

[3] No state shall "deny to any person within its jurisdiction the equal protection of the laws." **U.S. CONST. amend. XIV, § 1, cl. 4.**

His forty-five surviving legal claims stem from three broad factual allegations involving the six Defendants named in the amended complaint: (1) Roger Walker, Jr., (2) William Watts, (3) Greg Lambert, (4) Carl Miller, (5) Bonnie Sullivan, and (6) Ken Bartley (incorrectly referred to in several early pleadings/Orders as Defendant "Bantey" or "Banley").

First, Wilkins alleges that Defendant Sullivan (Tamms' dietary manager) refused to serve him religiously prescribed unleavened bread during Passover 2006, served him religiously proscribed saltines (instead of unleavened bread) during Passover 2008, and failed to serve him a special meal on the 2008 Feast of Weeks holy day.[4] Wilkins asserts that Sullivan thereby violated his right to practice religion freely (under the Free Exercise Clause, RLUIPA, and IRFRA) and his right to be free from religious discrimination (under the Equal Protection Clause).

Second, Wilkins claims that Defendants Walker (the IDOC director), Watts (IDOC's head chaplain), Bartley (Tamms' warden/chief administrative officer), Lambert (Tamms' assistant warden) and Miller (Tamms' senior chaplain) violated Wilkins' rights under the Free Exercise Clause, RLUIPA, and IRFRA by systematically denying Wilkins a turban, religious literature and religious videos. Those Defendants also are alleged to have violated Wilkins' Free Exercise, RLUIPA, IRFRA, and Equal Protection rights by failing to hire an AHI chaplain for Tamms. Further, Wilkins claims that not hiring an AHI chaplain in a prison that employed Muslim, Jewish, Catholic and Christian clergy violates the Establishment Clause.

Lastly, Wilkins alleges Senior Chaplain Miller violated his Equal Protection rights by deliberately denying Wilkins' requests for AHI materials while providing equivalent Christian

---

[4] The Feast of Weeks is also known as Shavuote. *See African Hebrew Israelites of Jerusalem*, "Holy Calendar," www.africanhebrewisraelitesofjerusalem.com/2011HolyDaysCalendar.html (visited Jan. 20, 2012). For a short discussion of AHI beliefs, *see Grayson v. Schuler*, -- F.3d --, 2012 WL 130454, at **3–4 (7th Cir. Jan. 13, 2012).

materials to Christian inmates and by bringing Wilkins Christian materials, in an effort to convert Wilkins to Christianity.

Defendants move for summary judgment on most (but not all) of Wilkins' claims.[5] Defendants target various claims with the doctrines of mootness, sovereign immunity, and qualified immunity. Additionally, according to Defendants' motion, Director Walker's lack of personal involvement entitles him to summary judgment on Wilkins' § 1983 claims. All Defendants should, they argue, prevail at this stage on any individual-capacity RLUIPA claims, because RLUIPA does not entitle a plaintiff to damages against individuals. Defendants argue they are entitled to summary judgment on the Free Exercise claims because no Defendant substantially burdened Wilkins' religious practices. Defendants present a similar substantive argument about Wilkins' Equal Protection claims. The motion has been fully briefed, the entire record thoroughly reviewed, and the Court now rules as follows.

## JURISDICTION AS TO STATE LAW (IRFRA) CLAIMS

A federal court is obliged to make an inquiry *sua sponte,* if a doubt arises as to the existence of its jurisdiction. *Tylka v. Gerber Prods. Co.***, 211 F.3d 445, 447–48 (7th Cir.), *cert. denied,* 531 U.S. 1002 (2000); *Arbaugh v. Y & H Corp.***, 546 U.S. 500, 514 (2006).** Though Defendants inexplicably failed to raise the issue in either their answer or summary judgment motion, the Court is obliged to examine whether it has jurisdiction of Wilkins' IRFRA claims. It does not.

IRFRA creates a right of action "against a government," **775 ILCS 35/20**, and imposes a duty to "not substantially burden a person's exercise of religion." **775 ILCS 35/15.** *See, e.g., St. John's United Church of Christ v. City of Chicago,* **502 F.3d 616, 622 (7th Cir. 2007),**

---

[5] Because they do not move for summary judgment on Wilkins' Establishment Clause claims (except broadly as to any possible injunctive relief) or IRFRA claims, Defendants' motion is actually for partial summary judgment.

*cert. denied,* **533 U.S. 1032 (2008)("The IRFRA provides generally that the 'government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person" is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.").** The term "government" is defined broadly — it includes "a branch, department, agency, instrumentality, and official (or other person acting under color of law)." **775 ILCS 35/5.**

Of course, IRFRA is an Illinois law. As to claims against the State of Illinois founded upon any Illinois law, the Illinois Court of Claims has "exclusive jurisdiction." **705 ILCS 505/8(a).** Official-capacity IRFRA claims lie beyond the jurisdiction of federal courts. A suit against a public employee in his official capacity is a suit against the state, and the Illinois Court of Claims has "exclusive jurisdiction of all claims" against the state founded upon any law of the State of Illinois. *Nelson v. Miller*, **570 F.3d 868, 885 (7th Cir. 2009); 705 ILCS 505/8(a).** Therefore, to the extent that Wilkins brings his IRFRA claims against Defendants in their official capacities, those claims must be and are hereby **DISMISSED**.

The Court also concludes it has no jurisdiction over Wilkins' individual-capacity IRFRA claims. Though the Seventh Circuit did not address the issue in *Nelson*, federal district courts have barred potential individual-capacity IRFRA claims. *See, e.g., Banks v. Dougherty*, **2010 WL 747870, at \*\*31–32 (N.D. Ill. Feb. 26, 2010);** *Boyd v. Wright*, **2011 WL 77713, at \*\*10–12 (C.D. Ill. Feb. 28, 2011);** *Nelson v. Miller*, **2011 WL 6400524, at \*1–2 (S.D. Ill. Dec. 19, 2011).** Interpreting Illinois caselaw, the district courts have held that IRFRA claims against state employees are in effect actions against the state, since the individuals' duties to a plaintiff arise solely from their employment with the state. *Banks*, **2010 WL 747870 at \*31,** *applying Fritz v. Johnston*, **807 N.E.2d 461, 468–69 (Ill. 2004).** *Accord Turner v. Miller*, **301 F.3d 599, 600**

**(sovereign immunity barred IDOC inmate's negligence claim as an action against the state, because defendant's duty imposed solely by virtue of state employment).**[6]

The Court agrees with the reasoning in *Banks* and *Boyd*. Here, each Defendant owed a duty not to substantially burden Wilkins' religious practices, but only because each Defendant was employed by the IDOC. *See Boyd* **at \*12 ("Decisions on what meals would be provided to vegan IDOC inmates are uniquely governmental.").** As such, Wilkins' IRFRA claims are state law claims against Illinois, over which the Illinois Court of Claims enjoys "exclusive jurisdiction." **705 ILCS 505/8(a).** This Court lacks jurisdiction over Wilkins' individual-capacity IRFRA claims, so those claims also must be and are hereby **DISMISSED**.

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, **648 F.3d 506, 517 (7th Cir. 2011); FED. R. CIV. P. 56(a).** The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).**

When a summary judgment motion is submitted and supported by evidence as provided in Rule 56(c), the adverse party may not rest on mere allegations or denials in its pleadings, but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547 (7th Cir. 2011).**

---

[6] Sovereign immunity under Illinois' statutory scheme is distinguishable from a waivable sovereign immunity defense, which is not jurisdictional. *See Blagojevich v. Gates*, **519 F.3d 370, 371 (7th Cir. 2008) ("Sovereign immunity concerns the remedy rather than adjudicatory competence.").** Jurisdiction on an IRFRA claim cannot be waived, because Illinois gives *exclusive* jurisdiction to the Illinois Court of Claims. In other words, Illinois' sovereign immunity scheme concerns both remedies and adjudicatory competence.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986).** A mere scintilla of evidence supporting the non-movant's position is insufficient; a party defeats summary judgment only when it presents definite, competent evidence to rebut the motion. *Albiero v. City of Kankakee*, **246 F.3d 927, 931–32 (7th Cir. 2001).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Van Antwerp v. City of Peoria*, **627 F.3d 295, 297 (7th Cir. 2010);** *Anderson*, **477 U.S. at 248.**

Finally, the Court's role is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter; rather it is to determine whether a genuine issue of triable fact exists. *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** At summary judgment, the Court considers the facts in a light most favorable to the non-movant. *Srail v. Village of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** In the instant case, the Court construes the facts and draws reasonable inferences in Wilkins' favor. *Id.*; *Nat'l Athletic Sportswear, Inc.*, **528 F.3d at 512.**

## ANALYSIS OF FEDERAL CLAIMS

With his IRFRA claims dismissed, Wilkins' amended complaint invokes three provisions — one statutory and two constitutional — that protect his religious rights. As noted above, the statutory claim is based on RLUIPA, and the constitutional claims are grounded on the First Amendment and Fourteenth Amendment to the United States Constitution.

RLUIPA, a federal statute passed under Congress' Spending Clause and Commerce Clause authority, affords heightened protection (in the form of strict scrutiny) to institutionalized persons' exercise of religion. *Sossamon v. Texas*, **131 S. Ct. 1651, 1655–56 (2011);** *Nelson v. Miller*, **570 F.3d 868, 886 (7th Cir. 2009); 42 U.S.C. § 2000cc-1.** The Free Exercise Clause, on the

other hand, permits neutral, generally applicable rules even if they incidentally burden a particular religious practice. *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008), *discussing Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).[7] Religious discrimination is forbidden by the Equal Protection Clause, which protects against arbitrary discrimination "unrelated to the character of the activity allegedly discriminated against." *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988). A government practice or policy runs afoul of the Establishment Clause if it has no secular purpose, its primary effect advances or inhibits religion, or it fosters an excessive entanglement with religion. *See Lemon v. Kurtzman,* 403 U.S. 602, 612-13 (1971). The Establishment Clause also prohibits the government from *favoring* one religion over another without a legitimate secular reason. *Nelson*, 570 F.3d at 881.

One point bears initial note: as part of its analysis, this Court may not inquire into whether Wilkins' beliefs or practices are central to his religion. *See, e.g., Koger*, 523 F.3d at 797, *citing Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) **("RLUIPA bars inquiry into whether a particular belief or practice is central to a prisoner's religion" but does not preclude inquiry into the sincerity of the prisoner's professed religiosity).** And although it is fair to inquire into whether a prisoner's beliefs are *sincere*, the sincerity of Wilkins' beliefs is not an issue before the Court on this motion. Cognizant that this Court must avoid making constitutional decisions where possible, *see Koger,* 523 F.3d at 801 **(federal courts should "do what they can to avoid making constitutional decisions")**, analysis starts with Wilkins' statutory claims.

---

[7] The Free Exercise Clause formerly afforded individuals the same heightened protection as RLUIPA now does. The Supreme Court first articulated the current, less-stringent Free Exercise Clause standard in 1990. *See Employment Division v. Smith*, 494 U.S. 872, 886 n.3 (1990). Congress responded by enacting the Religious Freedom Restoration Act (RFRA) in 1993, in order to "restore the compelling interest test." **42 U.S.C. § 2000bb(b)(1)**. RFRA was struck down (as to the states) as exceeding the Fourteenth Amendment's enforcement power. *City of Boerne v. Flores*, **521 U.S. 507 (1997).** Congress again responded, enacting RLUIPA under its Spending Clause and Commerce Clause authority. *Sossamon*, **131 S. Ct. at 1656.**

A. **RLUIPA**

RLUIPA prohibits prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that imposing the burden (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. *Nelson*, 570 F.3d at 877, *citing* 42 U.S.C. § 2000cc-1(a). But sovereign immunity shields state officials from monetary damages in their official capacity, *Sossamon*, 131 S. Ct. at 1663, and RLUIPA does not allow for damages against prison officials in their individual capacity, *Nelson*, 570 F.3d at 886–89. So RLUIPA affords an inmate only injunctive relief.

Wilkins cannot sustain a claim for injunctive relief. He has not been incarcerated at Tamms since 2009, and he is no longer in IDOC custody at all. His RLUIPA claims are therefore moot, and must be **DISMISSED**. **See *Maddox v. Love*, 655 F.3d 709, 716–17 (7th Cir. 2011) (prisoner had "no claim to injunctive relief in light of his transfer" to another IDOC prison).**

B. **Constitutional Provisions**

Prisoners retain the right to exercise their religious beliefs while incarcerated, but that right is not unfettered. *Ortiz v.* **Downey, 561 F.3d 665, 669 (7th Cir. 2009).** The Free Exercise and Equal Protection Clauses work in tandem to protect an individual's religious freedom. In the Seventh Circuit, the two provisions can overlap. Arbitrary discrimination based on religion is forbidden by both clauses. **See *Grayson v. Schuler*, -- F.3d ---, 2012 WL 130454, at *2 (7th Cir. Jan. 13, 2012) (a Free Exercise case of "outright arbitrary discrimination" against an AHI inmate); *Reed*, 842 F.2d at 962 (regarding religious discrimination, the Equal Protection Clause protects against "arbitrariness unrelated to the character of the activity allegedly discriminated against"); *Hearn v. Kennell*, 433 F. Appx. 483, 484 (7th Cir. 2011) (an Equal Protection claim required an inmate to show intentional discrimination based on his**

**religion)**. And when arbitrary discrimination is not at issue, religious discrimination analysis under the Equal Protection Clause is governed by Free Exercise jurisprudence. *Reed*, **842 F.2d at 962.** Each of Wilkins' claims, therefore, is examined in light of the Free Exercise Clause's rational basis review, and under the rubric of arbitrary discrimination.

Under the Free Exercise Clause, neutral rules of general applicability are constitutional even if they incidentally burden a particular religious practice. *Koger*, **523 F.3d at 796.** In the prison context, restrictions that burden an inmate's religious exercise are permissible if they are reasonably related to a legitimate penological objective, such as security or economic concerns. *Maddox*, **655 F.3d at 719;** *Ortiz,* **561 F.3d at 669.**[8]

The test is less restrictive than that ordinarily applied to constitutional infringements "in consideration of the need to … [avoid] unnecessary judicial intrusion into security problems and other prison concerns." *Maddox*, **655 F.3d at 719***, citing O'Lone v. Estate of Shabazz*, **482 U.S. 342, 348–49 (1987).** Courts balance a prisoner's right to be afforded a reasonable opportunity to exercise religious freedom against the prison's legitimate penological goals. *Maddox*, **655 F.3d at 719,** *citing Young v. Lane*, **922 F.2d 370, 374 (7th Cir. 1991).** To determine the reasonableness of prison regulations, courts look to factors such as whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; whether there are alternative means for an inmate to exercise his asserted right; the impact of any accommodation on guards, other inmates, and the allocation of prison resources generally; and the absence of ready alternatives. *Turner v. Safley*, **482 U.S. 78, 89–90 (1987).** *Accord Vinning-El*, **657 F.3d at 592–93.**

---

[8] In arguing that no Defendant substantially burdened Wilkins' exercise of religion, Defendants appear to have assumed that RLUIPA's heightened scrutiny is the relevant test for whether they are entitled to summary judgment on Wilkins' Free Exercise Clause claims.

The Equal Protection Clause requires inmates to be treated equally. *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). Prisons cannot discriminate against a particular religion. *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). In providing reasonable opportunities for an inmate to exercise religious freedom, the efforts of prison administrators, when assessed in their totality, must be evenhanded. *Maddox*, 655 F.3d at 719, *citing Al-Alamin*, 926 F.2d at 686. Though economic and security constraints may require one sect to be accommodated differently than another, prisons must respect the rights of inmates adhering to minority or non-traditional religions to the same degree as inmates who belong to larger or more traditional denominations. *Maddox*, 655 F.3d at 720, *citing Al-Alamin*, 926 F.2d at 686. Of course, intentionally discriminating against inmates because of their religion violates both the Free Exercise and Equal Protection Clauses. *See Grayson*, 2012 WL 130454 at *2.

Because the constitutional provisions are intertwined, the Court will take up Defendants' motion under Free Exercise and Equal Protection analysis together, organized around Wilkins' three broad factual complaints: (1) his religious diet; (2) the failure of IDOC officials to hire an AHI chaplain or provide AHI materials; and (3) his Equal Protection claims against Chaplain Miller.

Defendants broadly contend that Wilkins' claims for injunctive relief are moot, because his transfer from Tamms and subsequent release from IDOC custody prevent the Court from awarding relief to redress these claims. Wilkins cedes the point, clarifying in his response that he is not maintaining his claim to injunctive relief but arguing that his claims for money damages are not moot.

Both parties are correct. Wilkins' constitutional claims for injunctive relief are **DISMISSED** as moot. Insofar as Wilkins' constitutional claims survive, they are only against Defendants in their individual capacities and only for money damages.

### 1. *Religious Diet*

Wilkins alleges Defendant Sullivan "substantially burdened" his free exercise rights by denying him unleavened bread during Passover 2006, serving him saltines rather than unleavened bread during Passover 2008, and failing to serve him a special meal during the 2008 Feast of Weeks. While Wilkins' use of "substantial burden" language indicates he may also be arguing under the heightened RLUIPA standard, it provides a starting point—and stopping point—in analyzing his Free Exercise claim against Sullivan. The Court need not look to whether Defendant Sullivan's actions were reasonably related to legitimate penological objectives, because Wilkins has not shown any facts that could lead to a jury to conclude that Sullivan burdened his Free Exercise.

A prisoner's religious exercise is burdened if he must choose between adequate nutrition and his religious dietary practice. *Nelson*, **570 F.3d at 879.** For example, denying a Catholic inmate a meatless diet on Fridays and during Lent burdened his practice of religion. *Nelson*, **570 F.3d at 880.** In *Nelson*, the inmate — whose religious tenets led him to skip all the meat in a regular prison diet — received insufficient nutrition: his bones were protruding and he was hospitalized for weight loss. *Id.* In measuring the burden on religious exercise, the Seventh Circuit considered how long the inmate was forced to choose between eating meat and following his religious tenets: at minimum, he had to forego adequate nutrition every Friday and for Lent's forty-day span. *Id., citing Love v. Reed*, **216 F.3d 682, 689–90 (8th Cir. 2000) (refusing to accommodate prisoner's religious diet and forcing him to fast once per week was a substantial burden).**

Here, Wilkins has identified no material fact that could establish that Sullivan burdened his religious exercise. Regarding the Passover meals, at best Wilkins can claim to have missed fourteen servings of unleavened bread in 2006 and 2008. Wilkins does not assert the rest of his 2006 or 2008 Passover meals were nutritionally deficient in any way. Unlike *Nelson*, where an

inmate had to forgo a large percentage of his daily calories for over ninety days per year, Wilkins' complaints involve missing about two dozen cracker-sized servings over a three-year span. He did not have to make "an improper choice between adequate nutrition and observance of the tenets of his faith." *Hunafa v. Murphy*, **907 F.2d 46, 47 (7th Cir. 1990).**

Likewise, Wilkins' religious practices were not unconstitutionally burdened on 2008's Feast of Weeks. According to Wilkins, his practice on the Feast of Weeks involves partaking of the first fruits of the summer harvest, which Sullivan failed to provide him (Doc. 65-1, 5). Instead, Sullivan served Wilkins a regular meal (*id.*). Wilkins does not claim his nutritional needs went unsatisfied, or that he had to choose between nutrition and religion, but that he was not served the regular meal *plus* special fruit servings. Sullivan is entitled to summary judgment to the extent that Wilkins claims his Free Exercise was burdened. **See *Walker v. Wright*, 2010 WL 4068945 at \*2 (C.D. Ill. Oct. 15, 2010) ("This is not competent evidence that the plaintiff's diet was nutritionally lacking, much less that it amounted to a [constitutional] violation.").**

But the analysis does not end there, since Wilkins also claims that Sullivan arbitrarily discriminated against him for being an AHI believer. Defendants could have but failed to seek summary judgment on this point. Wilkins' Equal Protection claim against Sullivan thus survives. **See *Graham v. Connor*, 490 U.S. 386, 395 (1989) (constitutional claims must be addressed under the most applicable provision).** Regarding Defendant Sullivan, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

2. *AHI Chaplain and Materials*

Prisons need not provide every religious sect with identical facilities; nor must a prison employ chaplains representing every faith among the inmate population. *Cruz v. Beto*, **405 U.S. 319, 322 n.2 (1972);** *Johnson-Bey v. Lane*, **863 F.2d 1308, 1310 (7th Cir. 1988).** But prison restrictions that infringe on an inmate's exercise of his religion are constitutional only if they are

reasonably related to a legitimate penological objective, such as security and economic concerns. *Maddox*, **655 F.3d at 719;** *Turner*, **482 U.S. at 89.** And in providing opportunities for religious practice, the efforts of prison administrators, when assessed in their totality, must be evenhanded: treatment of all inmates must be qualitatively comparable. *Al-Alamin*, **926 F.2d at 686.**

The Seventh Circuit Court of Appeals has held it premature at the pleading stage to determine whether budgetary restrictions or security concerns were legitimate penological reasons to deny a detainee religious articles, *Ortiz*, **561 F.3d at 669–70,** or to cancel AHI services, *Maddox*, **655 F.3d at 720.** Although this case is well past the pleading stage, questions of material fact remain. Wilkins' claims regarding an AHI chaplain and AHI materials must, in part, survive summary judgment.

At its core, Defendants' argument is this: neither refusing to hire an AHI chaplain nor refusing to purchase AHI materials is a constitutional violation, since Wilkins does not have an established right to either. That argument misses the mark. Wilkins, like all Americans, has a right to practice his religion, although his right is subject to the demands of the penal system. Courts give those demands a wide berth. As long as Tamms officials can show their decisions are reasonably related to legitimate penological objectives and qualitatively comparable to decisions made about inmates of other faiths, the lack of AHI materials and personnel at Tamms is permissible.

But Defendants make no such argument. Their motion fails to indicate any reason why no AHI chaplain was hired or why no AHI materials were purchased. Based on the record, it could be inferred that a lack of funds precluded an AHI hire. It could be inferred that no qualified AHI chaplain was available. Or it could be inferred that long-term budgetary problems forced

Tamms officials to make difficult but reasonable choices in diverting funds towards non-AHI religious materials.[9]

However, drawing inferences *in Wilkins' favor* — as the Court must in the vacuum left by the IDOC's failure to offer contrary facts and explanations — it also could be inferred that Tamms officials were arbitrarily shifting funds toward more mainstream religions. At summary judgment, the latter inference prevails. **See *Grayson*, 2012 WL 130454, at \*2, \*4 (in reversing summary judgment on a prisoner's Free Exercise claim, Court of Appeals noted that it could not find an articulated ground for a prison policy and was "left with what appears to be discrimination (though a trial might cast the facts in a different light)").**

Defendants fare better when they argue that it was not within their power (other than IDOC Director Walker, who had no personal involvement in the decisions to hire or purchase AHI materials) to hire a chaplain, and therefore none of them could have arbitrarily decided *not* to hire an AHI chaplain. **See *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006), citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (A § 1983 cause of action is against a person, and to recover damages a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right).**

In response, Wilkins points to an IDOC policy that vests authority to hire chaplains in a prison's Chief Administrative Officer (Doc. 72-6, 5). Wilkins has identified a genuine issue of material fact for trial. A reasonable jury could find that CAO Bartley's failure to hire an AHI

---

[9] Defendants do admit that religious materials are purchased, albeit rarely. But they nevertheless offer no explanation to meet the low constitutional bar that requires their choice not to purchase AHI materials to be reasonable. Instead, Defendants cling to the true, but irrelevant idea that Wilkins does not have a right that AHI materials be purchased (Doc. 79, 6). It is not required by the Constitution that AHI materials be purchased, but it is required — and unaddressed by Defendants — that Tamms officials act evenhandedly toward all religions when making purchasing decisions.

chaplain violated Wilkins' constitutional rights. Wilkins' claims pertaining to the hiring of an AHI chaplain, therefore, are limited to CAO Bartley.

So Wilkins' claims regarding AHI materials and an AHI chaplain survive as follows. As to Director Walker, who had no personal involvement with either of the decisions, Defendants' summary judgment motion will be **GRANTED**. As to claims pertaining to Defendants Bartley, Miller, Lambert and Watts and the failure to purchase AHI materials, Defendants' motion will be **DENIED**. As to the failure to hire an AHI chaplain, the Defendants' motion will be **GRANTED** as it pertains to Defendants Miller, Lambert and Watts but **DENIED** as it pertains to Defendant Bartley.

### 3.     *Chaplain Miller*

Wilkins' final claim is a specific Equal Protection claim against Defendant Miller, whom he alleges denied Wilkins' requests for religious books, literature, and an AHI video but contemporaneously provided equivalent Christian materials to Christian inmates and bringing Wilkins Christian material in an effort to convert him to Christianity. Such behavior clearly would violate the Equal Protection Clause norm that prison officials must evenhandedly treat inmates of different faiths in a manner that is "qualitatively comparable." *Maddox*, **655 F.3d at 719–20.** Defendants' motion contains several arguments — all of them futile — attempting to show that Miller is entitled to summary judgment.

To justify his behavior, Miller points to Wilkins' deposition, wherein he testifies that Miller forbade AHI material because it was "dangerous" and "not allowed in the institution" (Doc. 65-1, 9). That would justify keeping AHI materials from Wilkins *if* there was a concurrent showing that, for example, AHI tenets required rebellion against prison officials, or if Miller followed a blanket policy that no faiths could be accommodated with materials due to security concerns. But

Page 16 of 20

nothing on the record (or indeed, in any readily-available AHI material) suggests that the tenets of AHI are in any way a threat to prison security.

Miller does not assert that Christian inmates (whether or not they are in a heightened security wing, as Wilkins was) were not accommodated. A blanket ban on religious accommodations in Tamms segregation unit is illogical given the record, since Miller was trying to give Wilkins, who was in segregation, Christian materials.

Wilkins' unrebutted portrayal of Miller's motivations are fatal to Miller's cause. According to Wilkins' deposition, Miller "tried to make it as if the [AHI] community wasn't there for me and the Christian community would be. And [Miller] always tried to force Christian literature upon me even when I'd be like 'I'm straight in my own way'" (Doc. 65-1, 9). Neither does the inconsistency of Miller's argument help him: the motion for summary judgment indicates no materials are available for use by AHI inmates (Doc. 65, 9–10), but the record (and Defendants' reply brief) indicate there is an AHI video in the prison (*see* Doc. 72-4, 4). Wilkins does not necessarily have a right to view a video, but Miller does have the obligation to respect the rights of AHI inmates to the same degree as the rights of those belonging to larger and more traditional denominations. *Al-Alamin*, **926 F.2d at 686.**

On the record before the Court, therefore, there is simply nothing comparable about the way Miller treats AHI prisoners and Christian prisoners. *See Maddox*, **655 F.3d at 719 ("The better approach is to examine the facts in the aggregate to determine whether, based on the totality of the situation, the defendants denied [the inmate] a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious beliefs.").**

Miller has not carried his burden of showing that no genuine issue of material fact exists for a jury. It may be shown at trial that Wilkins is not being truthful about the claims, but that

is not for the Court to decide here. See *Nat'l Athletic Sportswear,* **528 F.3d at 512.** Summary judgment on Wilkins' Equal Protection claim against Chaplain Miller is not appropriate. The motion, accordingly, will be denied as to this claim.

## QUALIFIED IMMUNITY

Qualified immunity protects officers performing discretionary functions from civil liability if their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would know about at that time. *Mustafa v. City of Chicago*, **442 F.3d 544, 548 (7th Cir. 2006).** In evaluating a qualified immunity claim, a court must ask two things: (1) whether the facts the plaintiff alleged "make out a violation of a constitutional right," and (2) if so, whether that right "was clearly established at the time of defendant's alleged misconduct." *Van den Boesch v. Raemisch,* **658 F.3d 778, 788 (7th Cir. 2011),** *quoting Pearson v. Callahan*, **555 U.S. 223, 232 (2009).** Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis to address first. *Id.* The undersigned Judge assesses the prongs in the order above-stated, concluding that Wilkins' allegations "make out a constitutional violation" and moving on to examine whether the rights at issue were clearly established in the relevant time period.

A plaintiff seeking to defeat an assertion of qualified immunity must show that the law concerning the asserted right was clearly established at the time the challenged conduct occurred. *Mustafa,* **442 F.3d at 548.** The contours of the right must be plain enough that a reasonable official would understand that what he is doing violates that right. *Koger*, **523 F.3d at 802.** The events giving rise to this suit occurred between 2005 and 2008. By that time, an inmate's right to practice his religion — so long as penological interests do not outweigh that right — was long-established. See *Young*, **922 F.2d 370;** *Turner,* **482 U.S. at 89–90.** Courts have long held that materially different treatment of different religious faiths is forbidden. *Vinning-El*, **657 F.3d at 593,** *citing Al-Alamin*, **926 F.2d at 686.** And the rule against arbitrary discrimination

against an individual because he is a member of a particular religion was articulated well before 2005. *See, e.g., Reed*, 842 F.2d at 962.

Regarding the surviving claims, there is no indication that any of the Defendants committed a reasonable error in applying those clearly established constitutional norms. Rather, the resolution of each claim depends either on whether Defendants failed to respect AHI members' rights to the same degree as the rights of members of a large denomination, or whether Defendants acted intentionally to discriminate against Wilkins because he was an AHI member. **See *Banks v. Almazar*, 2011 WL 1231142 at \*17 (N.D. Ill. March 30, 2011)("If Plaintiffs can prove that Defendants purposefully discriminated against them without legitimate justification because [of their religion], qualified immunity would not protect Defendants.").**

Stated another way, Defendants – at trial – may show that their actions were reasonable in light of legitimate penological objectives and that their actions were not colored by arbitrary discrimination. But those arguments go to the merits, as opposed to being precluded via qualified immunity. The rights at issue were clearly established by the time Wilkins was incarcerated, and Defendants' argument for qualified immunity fails. Insofar as Defendants move for summary judgment under a qualified immunity theory, their motion is **DENIED.**

## CONCLUSION

For the foregoing reasons, all claims brought under the Illinois Religious Freedom Restoration Act (775 ILCS 35/1–99) are **DISMISSED** for lack of subject-matter jurisdiction. All claims brought under the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc, *et seq.*) are **DISMISSED** as moot. Wilkins' official-capacity constitutional claims for injunctive relief are **DISMISSED** as moot.

As to Wilkins' other claims, for the reasons described above, Defendants' Motion for Summary Judgment (Doc. 64) is **GRANTED in part and DENIED in part.**

The following claims/issues remain for disposition:

1. Whether Defendant Sullivan violated the Equal Protection Clause by purposefully discriminating against Wilkins because of his AHI faith;

2. Whether Defendants Walker, Watts, Bartley, Lambert and Miller violated the Establishment Clause by hiring chaplains to serve inmates who follow mainstream religions but not for AHI inmates;

3. Whether Defendant Bartley's failure to hire an AHI chaplain was an act of arbitrary discrimination against AHI inmates (and therefore a violation of the Equal Protection Clause), or whether it was reasonably related to legitimate penological objectives;

4. Whether the failure to acquire AHI materials by Defendants Watts, Bartley, Lambert, and Miller was an act of arbitrary discrimination against AHI inmates (and therefore a violation of the Free Exercise Clause), or whether it was reasonably related to legitimate penological objectives; and

5. Whether Chaplain Miller violated the Equal Protection Clause by refusing Wilkins AHI materials while providing equivalent Christian materials to Christian inmates.

All Wilkins' remaining claims are for money damages only and directed against Defendants in their individual capacities only.

IT IS SO ORDERED.

DATED January 26, 2012.

        s/ Michael J. Reagan  
        MICHAEL J. REAGAN  
        United States District Judge